Yvonne JENKINS, Linda Burgest, and Deborah Washington, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CHATHAM PROPERTIES, LTD., a limited partnership; Metric Property Services, Inc.; Robert Kirkland, president of Metric Property Services, Inc.; William G. Sanders, general partner, Chatham Properties, Ltd.; Asbury D. Snow, Jr., general partner, Chatham Properties, Ltd., Defendants.

Civ. A. No. 480–203.

United States District Court, S. D. Georgia, Savannah Division.

Sept. 9, 1980.

Brian Rogal, Georgia Legal Services, Susan Gerrits, Savannah, Ga., for plaintiffs.

Robert W. Chestney, Hall & Fishman, P. C., Atlanta, Ga., for defendants.

ORDER

BOWEN, District Judge.

Plaintiffs brought this action for declaratory and injunctive relief and damages. They allege violations of the federally subsidized housing program contained in section 8 of the United States Housing Act. 42 U.S.C. § 1437f. Specifically, plaintiffs claim that defendant Chatham Properties, Ltd. has adhered to a policy of excluding welfare recipients and very low–income families entitled to utility payment subsidies in excess of their rental obligations under regulations issued by the Department of Housing and Urban Development [HUD]. Plaintiffs, all receiving their sole source of income under the Aid to Families with Dependent Children Program [AFDC], assert that they and other similarly situated very low–income families, subject to so–called "negative rent," are thus denied the benefits of the section 8 program under which defendants operate the development. By following an admitted policy excluding these "negative rent" families, plaintiffs claim that defendants deny them: (1) equal protection by arbitrary and invidious discrimination, (2) due process by the alleged failure to adjudicate plaintiffs' property interest in section 8 benefits with procedural fairness, and (3) the statutory intent that a "mix" of income levels be maintained at assisted units. Presently before the Court is plaintiffs' motion for a preliminary injunction.

The section 8 housing assistance payments program for new construction, 42 U.S.C. § 1437f, was enacted "to provide lower income families with decent, safe and sanitary rental housing assistance payments." 24 C.F.R. § 880.101(a)(1), 44 Fed. Reg. 59410–411 (1979). Housing assistance payments under the program "are made directly by the contract administrator [HUD or a public housing agency] to the

project owner to assist an eligible family leasing an assisted unit." *Id.* § 880.101(b), 44 Fed.Reg. 59411 (1979). Only rental assistance is provided; the program does not afford developers any construction or permanent financing.

To come within the ambit of section 8, developers submit preliminary proposals to HUD outlining particular projects. *See id.* § 880.305, 44 Fed.Reg. 59419 (1979). According to assigned funding or "contract authority" allocated by HUD, these preliminary proposals are then evaluated by HUD field offices in light of certain prescribed criteria. *See id.* § 880.306, 44 Fed.Reg. 59419 (1979). Once a preliminary proposal is selected, the developer submits a "final proposal" or detailed description of the project. *See id.* § 880.308, 44 Fed.Reg. 59421 (1979). Following a review and approval of the final proposal, the owner and the contract administrator execute an agreement to enter into a housing assistance payments contract, *see id.* §§ 880.201, 880.311, 44 Fed.Reg. 59412, 59422 (1979), and, thereafter, construction begins.

Upon satisfactory completion of the project, the owner and contract administrator execute a housing assistance payments contract, *id.* § 880.501(a), 44 Fed.Reg. 59423 (1979), which sets forth the rights and duties of the parties. Specifically, the contract defines the "contract rent" as the "total amount of rent . . . payable by HUD and the tenant to the owner for an assisted unit," *id.* § 880.201, 44 Fed.Reg. 59412 (1979), rented by an eligible family. The contract rent does not include an estimated cost of utilities, or so–called "utilities allowance," for which the eligible family is responsible. *Id.,* 44 Fed.Reg. 59413 (1979). Limitations on the contract rent are provided in Regulation 880.204, which specifies that, with certain exceptions, the contract rent plus any utilities allowance may not exceed the Fair Market Rent as determined by HUD.

Thus, the contract rent for a particular assisted apartment unit is the sum of the HUD "housing assistance payment" plus the "tenant rent." The tenant rent aspect of this equation is defined as the "total family contribution," that is "[t]he portion of an eligible family's income payable toward the family's total housing expense," *id.,* minus any utilities allowance. Accordingly, if the utility allowance exceeds the total family contribution, the tenant rent would be "negative" and zero payment would be due the owner. *See id.* § 880.604, 44 Fed.Reg. 59426 (1979).

The housing assistance payment, as the other aspect of the contract rent formula, is defined somewhat tautologously as "the difference between the contract rent for the unit and the tenant rent payable by the family." *Id.* § 880.501(d), 44 Fed.Reg. 59424 (1979). Augmenting this payment is an additional housing assistance payment for those tenants whose utilities allowance exceeds their total family contribution. The regulations provide:

> [T]he difference will be paid to the family as an additional housing assistance payment. The Contract will provide that the owner will make this payment on behalf of the contract administrator. Funds for this purpose will be paid to the owner in trust solely for the purpose of making the additional payment.

*Id.* § 880.501(e), 44 Fed.Reg. 59424 (1979). Thus, tenants with a "negative" tenant rent receive a payment for their excess utilities allowance from the owner derived from funds paid to the owner in trust by the contract administrator.

Once the project is completed, all management functions, including tenant selection, are the responsibility of the owner. *Id.* § 880.601(b), 44 Fed.Reg. 59425 (1979). Yet, "[i]n the initial renting of assisted units, the owner must lease at least 30 percent of the assisted units to very low–income families, . . . [and] use his best efforts to achieve leasing to families with a range of incomes so that the average of incomes of all families in occupancy is at or above 40 percent of the median income in the area." *Id.* § 880.603(c), 44 Fed.Reg. 59426 (1979). A "very low–income family" is defined as "[a]n eligible family whose income does not exceed 50 percent of the

252

median income for the area, as determined by HUD, with adjustments for the size of the family." *Id.* § 880.201, 44 Fed.Reg. 59413 (1979).

The relief requested in plaintiffs' motion for preliminary injunction is threefold: (1) enjoin defendants from signing leases for units at Chatham Gardens Apartments, or where leases have been signed, enjoin tenants from being allowed to move in; (2) enjoin defendants from refusing to accept applications for apartments from prospective tenants who have very low incomes or who are on welfare, and who would have very low, zero, or negative rent; and (3) enjoin defendants to consider applications from prospective tenants of the Chatham Gardens Apartments who have very low incomes or who are on welfare on the same basis as an application from any other person.

It is axiomatic that to prevail on a motion for preliminary injunction the burden is on the movant to satisfy four prerequisites:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued would not be adverse to the public interest.

*Hardin v. Houston Chronicle Publishing Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978); *see Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The grant or denial of a preliminary injunction lies within the sound discretion of the district court. *See Compact Van Equipment Co. v. Legget & Platt, Inc.*, 566 F.2d 952 (5th Cir. 1978). In exercising this discretion, the Court is mindful "that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." 489 F.2d at 573.

The main issue presented by plaintiffs' motion is whether the regulatory scheme promulgated under section 8 of the United States Housing Act or constitutional due process and equal protection mandates require an owner of an assisted project to rent to tenants with negative rents. Plaintiffs must show a substantial likelihood of prevailing on this question to warrant issuance of an injunction.

An examination of the regulations reveals no express requirement that an owner lease to negative-rent tenants. While the owner is constrained to lease thirty percent of the assisted units to very low-income families, no dispersion of incomes within that thirty percent is prescribed. The regulations may be viewed as condoning the leasing of assisted units to tenants with incomes in the upper ranges of the "very low-income" category, thereby excluding negative rent tenants. Buttressing this interpretation is the regulatory mandate that the average family income for all occupants be at or above forty percent of the median income in the area. Since assisted projects operate under a finite monetary allocation authority, the forty percent income average for occupancy may serve as a funding conservation measure and compel an owner to lease to upper-range "very low-income" families to ensure uninterrupted funding. Thus, an analysis of the regulations does not portend a substantial likelihood that plaintiffs will ultimately prevail on the merits.

A similar conclusion follows for plaintiffs' constitutional claims. With respect to the equal protection claim, assuming *arguendo* state action, defendants' conduct plausibly withstands a minimum scrutiny analysis. The fiscal conservation aspect of the regulatory scheme may be construed as a legitimate state interest fostered by HUD to which the owner subclassification excluding negative rent tenants is rationally related. Due process requirements are prescribed in the regulations. The owner is required to accept all applications for admissions. 24 C.F.R. § 880.603, 44 Fed.Reg. 59426 (1979). Furthermore:

If the owner determines that an applicant is ineligible on the basis of income or family composition, or that the owner is

not selecting the applicant for other reasons, the owner will promptly notify the applicant in writing of the determination, the reasons for the determination, and that the applicant has the right to meet the owner or managing agent in accordance with HUD requirements.

*Id.* § 880.603(b)(3), 44 Fed.Reg. 59426 (1979). Defendants stated that they are in conformance with these regulatory procedures.

Accordingly, since plaintiffs have failed to demonstrate a substantial likelihood of prevailing on the merits in this action, the motion for preliminary injunction is DENIED.